[Cite as *State v. Porter*, 2019-Ohio-4482.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28288 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-3953 |
| | : | |
| JAMES M. PORTER, JR. | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 1st day of November, 2019.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
 Attorney for Plaintiff-Appellee

DAVID E. STENSON, Atty. Reg. No. 0042671, 131 North Ludlow Street, Suite 316, Dayton, Ohio 45402
 Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant James M. Porter, Jr., appeals his conviction for the following offenses: Count I, having weapons while under disability (prior offense of violence), in violation of R.C. 2923.13(A)(2), a felony of the third degree; Count II, improper handling of a firearm in a motor vehicle, in violation of R.C. 2923.16(B), a felony of the fourth degree; and Count III, carrying a concealed weapon (loaded/ready at hand), in violation of R.C. 2923.12(A)(2), a felony of the fourth degree. Porter filed a timely notice of appeal with this Court on February 6, 2019.

{¶ 2} The incident which formed the basis for Porter's conviction occurred shortly after 10:00 p.m. on October 10, 2018, when Kettering Police Officer Matthew Burian was on routine patrol on East Stroop Road near Ackerman Boulevard. Officer Burian testified that he observed a red Ford pickup truck traveling westbound on East Stroop Road. Officer Burian performed a "random vehicle registration check" of the truck and discovered that the vehicle's registration had expired on May 22, 2018. At that point, Officer Burian activated his overhead lights and siren and initiated a traffic stop of the vehicle in the parking lot of a Kroger's grocery store located on Stroop Road.

{¶ 3} Officer Burian approached the vehicle on the driver's side and made contact with the driver and sole occupant, identified as Porter. Officer Burian testified that he asked Porter for his driver's license and proof of insurance. Porter gave Officer Burian an expired Ohio temporary identification card and a second expired identification card from California. Officer Burian testified that Porter stated that he did not have insurance and that the vehicle was owned by his father. Officer Burian then went back to his cruiser and entered Porter's name into the LEADS system in order to check the status of his driving privileges. Using LEADS, Officer Burian was able to determine that Porter did

not have any driving privileges in Ohio. Additionally, Officer Burian was able to determine that Porter had an active arrest warrant for a probation violation. At this point, Kettering Officer Joshua Wolf arrived at the scene of the stop, and Officer Burian directed Porter to exit the vehicle. Officer Burian placed Porter in handcuffs and put him in the back of the police cruiser.

{¶ 4} After Porter had been removed from the vehicle, Officer Wolf looked into the interior of the vehicle and observed the butt of a handgun protruding from a pocket on the driver's door of the vehicle. Upon further inspection, the handgun was found to be loaded. After the handgun was secured, Officer Wolf searched the passenger side of the vehicle, where he discovered a black backpack containing a black jacket, a ski mask, a wig, black gloves, and a brown unlabeled jar containing what was discovered to be some type of acidic liquid. Officer Wolf also found bolt cutters and binoculars under the passenger seat inside the vehicle. After Porter had been informed of his *Miranda* rights, he admitted that the brown jar was his and that he used the bolt cutters "for work." Tr. 43.

{¶ 5} On November 8, 2018, Porter was indicted for the following offenses: Count I, having weapons while under disability (prior offense of violence); Count II, improper handling of a firearm in a motor vehicle; and Count III, carrying a concealed weapon (loaded/ready at hand). At his arraignment on November 13, 2018, Porter stood mute, and the trial court entered pleas of not guilty on his behalf.

{¶ 6} On December 17, 2018, Porter filed a motion in limine seeking exclusion of the black jacket, black backpack, ski mask, wig, black gloves, brown unlabeled jar containing an acidic liquid, and bolt cutters. Porter also requested that the trial court preclude any mention at trial of his prior conviction for felonious assault. The record

establishes that, prior to trial, the parties agreed to stipulate that Porter had previously been convicted of felonious assault, an offense of violence.

{¶ 7} The case proceeded to jury trial on January 8, 2019, and on January 9, 2019, Porter was found guilty on all counts.[1]  At his disposition on January 24, 2019, the trial court sentenced Porter to 24 months in prison for having weapons while under disability. After merging Counts II and III, the trial court sentenced Porter to 18 months for Count III, carrying a concealed weapon.  The trial court ordered that the sentences be served concurrently for an aggregate term of 24 months in prison.

{¶ 8} It is from this judgment that Porter now appeals.

{¶ 9} Porter's first assignment of error is as follows:

THE COURT ERRED WHEN IT ALLOWED IRRELEVANT INFORMATION, INFERENTIAL EVIDENCE, TO BE PRESENTED AT TRIAL, WHICH TAINTED THE JURY'S PERCEPTION OF THE DEFENDANT THEREBY PREJUDICING DEFENDANT.

{¶ 10} In his first assignment, Porter contends that the trial court erred when it permitted the State to introduce into evidence Exhibits 1-21, which were photographs of the black jacket, black backpack, ski mask, wig, black gloves, brown unlabeled jar containing an acidic liquid, and bolt cutters.  Specifically, Porter argues that, by allowing the items into evidence, the jury could "conclude [that] the items as whole indicated some criminal mischief," thereby prejudicing him.  We note that the trial court admitted the State's photographic exhibits pursuant to Evid.R. 404(B), which states:

---

[1] We note that Officer Burian testified via deposition conducted before the trial court on December 21, 2018.

(B) Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

{¶ 11} Evid.R. 403(A) provides:

Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

{¶ 12} We have followed established precedent holding that Evid.R. 404(B) must be strictly construed against the admissibility of other-bad-acts evidence. *State v. Shaw*, 2d Dist. Montgomery No. 21880, 2008-Ohio-1317, ¶ 10, citing *State v. Broom*, 40 Ohio St.3d 277, 533 N.E.2d 682 (1988). "The courts in Ohio have long recognized that evidence of other crimes, wrongs or bad acts carries the potential for the most virulent kind of prejudice for the accused." *Id.* at ¶ 13. The Supreme Court of Ohio has established the following three-part test for the admission of Evid.R. 404(B) testimony:

The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401.

> The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R 403.

*State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20.

{¶ 13} The admission of other-bad-acts evidence under Evid.R. 404(B) "lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 96, citing *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 66. "Prejudice occurs if there is a reasonable possibility that the error might have contributed to the conviction." *State v. Hardy,* 2017-Ohio-7635, 97 N.E.3d 838, ¶ 65 (2d Dist.), citing *State v. Cowans,* 10 Ohio St.2d 96, 104-105, 227 N.E.2d 201 (1967)*.*

{¶ 14} At trial, the State had the burden to adduce evidence which established that Porter was aware of the presence of the handgun in the pocket of the driver's door of the vehicle in which he was stopped. In addition to the handgun, Officer Wolf discovered a black backpack containing a black jacket, a ski mask, a wig, black gloves, and a brown unlabeled jar containing what was discovered to be some type of acidic liquid in the passenger side of the vehicle. Officer Wolf also found bolt cutters and a pair of binoculars under the passenger seat. Porter admitted to the police that the brown jar

taken from the backpack was his and that he used the bolt cutters for work. Relying on Evid.R. 404(B), the State argued to the trial court that Exhibits 1-21, which were photographs of the black jacket, black backpack, ski mask, wig, black gloves, brown unlabeled jar, and bolt cutters were admissible with respect to the issues of identity and absence of mistake. Based upon his admissions regarding ownership of the bolt cutters and the jar, a reasonable factfinder could have inferred that Porter used the vehicle regularly and therefore was aware of any items in the vehicle, including the handgun.

{¶ 15} Therefore, the photographic evidence of the additional contents of the vehicle satisfied the first two elements set forth in *Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278. With respect to the third prong of the *Williams* analysis, exclusion of relevant evidence is mandatory where the "probative value [of the evidence] is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A). For the evidence to be excluded on this basis, "the probative value must be minimal and the prejudice great." *State v. Morales*, 32 Ohio St.3d 252, 257, 513 N.E.2d 267 (1987). The introduction of the additional photographic evidence was relevant and not unfairly prejudicial to Porter. Evidence regarding additional items in the vehicle was highly probative as it established that Porter used the vehicle regularly and thus had knowledge of what was in the vehicle, including the handgun. Unfavorable evidence is not equivalent to unfairly prejudicial evidence. *State v. Bowman*, 144 Ohio App.3d 179, 185, 759 N.E.2d 856 (12th Dist.2001). Accordingly, we find the trial court did not err in admitting into evidence State's Exhibits 1-21, as the danger of unfair prejudice was minimal and the evidence was clearly probative of whether Porter used the vehicle regularly and therefore had knowledge that the handgun was in

the pocket of the driver's door.

{¶ 16} Additionally, throughout the trial, the trial court repeatedly instructed the jury that they were not to consider the photographs of the black jacket, black backpack, ski mask, wig, black gloves, brown unlabeled jar, and bolt cutters "as it relates to any other activity, [sic] they may consider these items as it relates to identification or lack of mistake." Furthermore, prior to deliberations, the trial court instructed the jury as follows:

> Trial Court: Evidence was also admitted of items from the truck other than the handgun associated with the charges herein. The other items in the truck were received only for a limited purpose.
>
> The items were not received and you may not consider those items to prove the character of the defendant in order to show that he acted in conformity or in accordance with that character. The evidence may be considered by you only for the purpose of deciding whether it proves the absence of mistake, the defendant's opportunity to commit the offense or offenses charged in the indictment, defendant's knowledge of the circumstances surrounding the offense or offenses charged in the indictment or the identity of the person who committed the offense or offenses charged in the indictment. The evidence cannot be considered for any other purpose.

Thus, it apparent from the record that the trial court admitted the photographs pursuant to Evid.R. 404(B) for the sole purpose of establishing that Porter had knowledge that the handgun was in the pocket of the driver's door.

{¶ 17} Lastly, Porter argues that the record establishes that he was prejudiced

because, during deliberations, the jury sent a question to the judge regarding whether there was another cell phone in the vehicle with him. We note that the trial court responded to the jury's question with the following answer: "[Y]ou must rely on your collective memories as to the testimony."

{¶ 18} In support of his argument, Porter points out that State's Exhibit 5 depicts a cell phone sitting on the truck's seat next to where he would have been sitting. Additionally, State's Exhibit 20 depicts a cell phone placed next to a handgun. Porter argues that the jury's question regarding the cell phone establishes that they were confused about whether there were one or two cell phones found in the vehicle and that he was therefore prejudiced by the introduction of the photographs of the cell phone(s). We note that only one actual cell phone was introduced into evidence along with the two photos.

{¶ 19} Upon review, we find that the jury's question regarding the possible presence of an additional cell phone in the vehicle does not relate in any way to any inferences regarding Porter's character. While the evidence presented at trial regarding the cell phone may have been somewhat confusing, its inclusion at trial was not prejudicial to Porter. In light of the foregoing, we find that the trial court did not err when it admitted the photographs of the additional items, and Porter was not prejudiced by their admission.

{¶ 20} Porter's first assignment of error is overruled.

THE COURT ERRED IN FAILING TO THROW OUT THE TRAFFIC STOP AS IT VIOLATED APPELLANT'S FOURTH AMENDMENT RIGHTS, AS IT WAS AN UNREASONABLE SEARCH.

{¶ 21} In his second assignment, Porter argues that the initial traffic stop violated

his Fourth Amendment rights. Therefore, any evidence obtained as a result of the stop should have been suppressed.

{¶ 22} Initially, we note that Porter did not file a motion to suppress. Accordingly, we find that Porter has waived any argument or objection to the validity of the traffic stop. *See State v. Blanton,* 2d Dist. Montgomery No. 18923, 2002 WL 538869, *6 (the existence of reasonable articulable suspicion or probable cause to believe that defendant was guilty of criminal trespassing, and the corresponding admissibility or inadmissibility of the crack cocaine, were no longer at issue, given that such issues must be litigated through a pretrial suppression motion); *State v. Greer*, 39 Ohio St.3d 236, 240, 530 N.E.2d 382 (1988) (reasoning that the issue of probable cause to arrest the defendant was waived because it was not included in a pretrial motion to suppress as a basis for suppressing evidence); *State v. F.O.E. Aerie 2295*, 38 Ohio St.3d 53, 55, 526 N.E.2d 66 (1988) ("Inasmuch as the evidence considered by the trial court was not the subject of a timely motion to suppress, any error regarding its admissibility was waived.").

{¶ 23} Thus, for purposes of appellate review, Porter has waived all but plain error. *See State v. Saini*, 2d Dist. Greene No. 2013 CA 36, 2014-Ohio-5582, ¶ 13. Plain error may be noticed if a manifest injustice is demonstrated. Crim.R. 52(B); *State v. Howard*, 2d Dist. Montgomery No. 23795, 2011-Ohio-27, ¶ 31. In order to find a manifest miscarriage of justice, it must appear from the record as a whole that but for the error, the outcome of the trial clearly would have been otherwise. *State v. Long*, 53 Ohio St.2d 91, 96, 372 N.E.2d 804 (1978).

{¶ 24} The Fourth Amendment to the United States Constitution prohibits searches and seizures that are unreasonable. A police officer who stops a vehicle and detains its

occupants "seizes" the occupants within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). The seizure is reasonable under the Fourth Amendment if the officer has at least a reasonable and articulable suspicion that "criminal activity may be afoot," in other words, that a crime is being committed. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "[The] police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion [seizure]." *Id.* at 21. Also, "[w]hen determining whether an investigative traffic stop is supported by a reasonable and articulable suspicion of criminal activity, the stop must be viewed in light of the totality of the circumstances surrounding the stop." *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), at paragraph one of the syllabus.

{¶ 25} In the instant case, Officer Burian's decision to stop the truck emanated solely from the results of a random license plate check. As previously stated, Officer Burian testified that he performed a "random vehicle registration check" of the truck and discovered that the vehicle's registration had expired. It is well settled that "[r]andom, suspicionless license-plate checks done on in-cruiser computers do not implicate the Fourth Amendment and are permissible." *State v. Leveck*, 196 Ohio App.3d 26, 2011-Ohio-1135, 962 N.E.2d 316, ¶ 12 (2d Dist.). Accordingly, the traffic stop of the truck based upon the results of Officer Burian's random license plate check did not violate Porter's Fourth Amendment rights, and the trial court did not err, plainly or otherwise, when it failed to suppress the evidence from the traffic stop.

{¶ 26} Porter's second assignment of error is overruled.

{¶ 27} Porter's third and final assignment of error is as follows:

THE COURT ERRED WHEN IT DENIED APPELLANT'S ORAL RULE 29 MOTION FOR ACQUITTAL, WHEN THE PROSECUTION FAILED BEYOND A REASONABLE DOUBT TO PROVE APPELLANT WAS GUILTY OF THE CRIMES HE WAS CHARGED [sic].

**{¶ 28}** In his final assignment, Porter contends that the trial court erred when it denied his Crim.R. 29 motion for acquittal. Specifically, Porter argues that the State failed to adduce sufficient evidence that Porter had knowledge that the handgun was in the vehicle at the time his arrest.

**{¶ 29}** Crim.R. 29(A) states:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.

**{¶ 30}** Rulings on Crim.R. 29 motions are reviewed under the same standards that apply to review for sufficiency of the evidence. *State v. Baker*, 2d Dist. Greene No. 2009 CA 62, 2010-Ohio-2633, ¶ 16. When reviewing a trial court's decision with respect to a Crim.R. 29 motion, the proper inquiry is whether, " 'after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Cherry*, 171 Ohio App.3d 375, 2007-Ohio-2133, 870 N.E.2d 808, ¶ 9 (2d Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), at paragraph two of the syllabus.

**{¶ 31}** Porter made his Crim.R. 29 motion for acquittal with respect to all three

counts in the indictment. Porter was convicted of having a weapon while under disability pursuant to R.C. 2923.13(A)(2), which provides in pertinent part as follows:

(A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

* * *

(2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.

{¶ 32} Porter was also convicted of improper handling of a firearm in a motor vehicle, in violation of R.C. 2923.16(B), which states as follows:

(B) No person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle.

{¶ 33} Lastly, Porter was convicted of carrying a concealed weapon (loaded/ready at hand), in violation of R.C. 2923.12(A)(2), which states in pertinent part:

(A) No person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, any of the following:

(2) A handgun other than a dangerous ordnance; ***

{¶ 34} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that

such circumstances probably exist." R.C. 2901.22(B).

{¶ 35} "In order to 'have' a firearm, one must either actually or constructively possess it." *State v. Ridley*, 10th Dist. Franklin No. 03AP-1204, 2005-Ohio-333, ¶ 18, quoting *State v. Hardy*, 60 Ohio App.2d 325, 327, 397 N.E.2d 773 (8th Dist.1978). "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *Id.*, quoting *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976).

{¶ 36} We agree that the record in this case does not contain any direct evidence, such as fingerprints, that Porter had actual possession of the handgun. However, direct evidence is not required in order to find sufficient evidence to sustain a conviction. *State v. Lott*, 51 Ohio St.3d 160, 167, 555 N.E.2d 293 (1990). "Circumstantial evidence can be used to support a finding of constructive possession." *State v. Najeway*, 9th Dist. Summit No. 21264, 2003-Ohio-3154, ¶ 10. "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus.

{¶ 37} Upon review, we conclude that the State adduced sufficient circumstantial evidence that Porter had knowledge that the handgun was in the vehicle. Initially, we note that the loaded handgun was found in the driver's door of the truck where Porter would have entered and exited every time he drove the vehicle. Evidence established that the interior of the truck was a light color while the gun was black, making it easier to see given the contrast. Furthermore, while Porter was not the owner of the truck, the State presented evidence that he was the primary driver of the vehicle. Specifically, the

State established that Porter kept his own personal property in the truck, i.e. the bolt cutters he admitted to using "for work." Significantly, Porter was the only occupant of the vehicle on the night of the traffic stop, and the handgun was loaded and operable when it was found by Officer Wolf.

{¶ 38} Accordingly, we find, when viewing the evidence in a light most favorable to the State, that a rational trier of fact could have found that Porter, knowingly had a firearm while under a disability. We further conclude, again when viewing the evidence in a light most favorable to the State, that a rational trier of fact could have found that Porter knowingly had a loaded firearm in a motor vehicle, and that the handgun was knowingly concealed in a pocket in the driver's door of the vehicle.

{¶ 39} Porter's third assignment of error is overruled.

{¶ 40} All of Porter's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and TUCKER, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Sarah E. Hutnik
David E. Stenson
Hon. Mary Katherine Huffman