**[Cite as *State v. Cochran*, 2020-Ohio-3054.]**

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-41 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-686 |
| | : | |
| DUSTIN S. COCHRAN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of May, 2020.

. . . . . . . . . . .

MARCY A. VONDERWELL, Atty. Reg. No. 0078311, Assistant Prosecuting Attorney, Greene County Prosecutor's Office, 61 Greene Street, Suite 200, Xenia, Ohio 45385
      Attorney for Plaintiff-Appellee

CHARLES M. BLUE, Atty. Reg. No. 0074329, 401 East Stroop Road, Kettering, Ohio 45429
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Dustin S. Cochran appeals his conviction for the following offenses: Count I, kidnapping in violation of R.C. 2905.01(A)(3), a felony of the first degree; Count II, felonious assault (serious physical harm) in violation of R.C. 2903.11(A)(1), a felony of the second degree; Count III, felonious assault (deadly weapon) in violation of R.C. 2903.11(A)(2), a felony of the second degree; Count IV, endangering children in violation of R.C. 2919.22(A), a misdemeanor of the first degree; Count V, endangering children in violation of R.C. 2919.22(A), a misdemeanor of the first degree; and Count VI, domestic violence in violation of R.C. 2919.25(A), a misdemeanor. Counts I, II, and III were accompanied by firearm specifications pursuant to R.C. 2941.145. There was also a forfeiture specification for a Criterion Die and Machine Model .22 caliber handgun. Cochran filed a timely notice of appeal on July 9, 2019.

{¶ 2} The events which formed the basis for the convictions occurred over a span of days from August 25 through August 29, 2018, when Cochran repeatedly physically abused his girlfriend, M.S., after discovering that she had cheated on him with another resident of the trailer park in which they lived in Fairborn, Ohio.

{¶ 3} On August 29, 2018, at approximately 11:30 p.m., M.S. ran from the residence she shared with Cochran to the residence of her mother, Diana Boyd, located in the same trailer park. A State's witness, Kyle Valencia, testified that he was at Boyd's residence when he observed M.S. arrive "beaten black and blue and bloody." Tr. 28. Boyd testified that after being awoken by Valencia's then-girlfriend, she observed M.S. with what appeared to be serious injuries to her face, ears, and body. Valencia testified that Cochran was chasing M.S. Valencia then ran off in pursuit of Cochran, who stopped chasing M.S., ran back to his residence, and locked himself inside. Valencia testified

that while standing at the front door of the couple's residence, he observed their two minor children sitting inside. Valencia testified that he also observed Cochran inside the residence holding a handgun. Cochran yelled at Valencia and ordered him to leave the property.

{¶ 4} After Valencia left to chase after Cochran, Joshua Shepherd, M.S.'s cousin, who was also at Boyd's residence that night, called the police to report that Cochran had severely beaten M.S. and was in his residence with the couple's two minor children armed with a handgun. Fairborn Police Officer Joshua Lightner was the first officer to respond to the trailer park. Officer Lightner testified that upon arriving at the scene, a male ran up to his cruiser and stated that Cochran was inside his residence with his two children and in possession of a handgun. Lightner parked his cruiser near Cochran's trailer and, using the cruiser's loudspeaker, began talking to Cochran in an effort to get him to come outside. Cochran, however, did not respond to Lightner. Thereafter, Fairborn's SWAT team was called in to take control of the situation. More than an hour later, Cochran exited his residence and was taken into custody by the SWAT team. The SWAT team turned Cochran over to Officer Lightner, who placed him in the back of cruiser.

{¶ 5} Officer Lightner testified that he *Mirandized* Cochran immediately after placing him in the cruiser; after being *Mirandized*, Cochran stated, "Yeah, she was cheating on me, so I beat her up…[b]ut I never held her hostage." Tr. 78. Additionally, Cochran denied having or even owning a gun. He told Lightner that he did not come out of his residence when being addressed over the police loudspeaker because he did not hear it.

{¶ 6} Fairborn Police Detective Matthew Sortman also responded to the trailer park

on the night in question. Sortman testified that he was the officer in charge of the investigation, and he was able to observe M.S. prior to her being transported to the Soin Medical Center. Sortman testified that M.S. showed severe bruising on her arms, torso, legs, face, and ears.

{¶ 7} Paramedic Lieutenant Les Jeffers testified that he provided initial treatment to M.S. and transported her to the hospital. Jeffers testified that M.S. had difficulty walking and hearing due to the extent of her injuries. M.S. also informed Jeffers that Cochran had stabbed her in the legs.

{¶ 8} After M.S. was taken to the hospital, Beavercreek Police Officer Meryl Westerheide was dispatched to take photographs of M.S.'s injuries. Officer Westerheide identified and testified regarding the 39 photographs she took of M.S.'s injuries. There were no objections to Officer Westerheide's testimony at trial with respect to the photographs; however, at the close of the State's case, defense counsel objected to the admission of the photographs as being duplicative. The photographs depicted the extent of the severe bruising to M.S.'s head, face, arms, chest, shoulders, stomach, hips, and legs. Boyd also testified that she observed M.S. that day with what appeared to be serious injuries to her face, ears, and body.

{¶ 9} M.S., age 24, testified that she had three children with Cochran, two of whom resided with them on August 29, 2018.[1] M.S. testified that the abuse began on August 25, 2018, when Cochran punched her in the face with a closed fist and gave her a black eye. Between August 25 and August 29, 2018, Cochran repeatedly punched M.S. in the

---

[1] Permanent custody of Cochran and M.S.'s oldest child had been awarded to the paternal grandmother for undisclosed reasons.

ears and stuck objects in her ears. M.S. testified that Cochran also repeatedly struck her on the back and face with an extension cord. Several times, Cochran wrapped a belt around M.S.'s neck, placed his foot on the middle of her back, and tightened the belt until M.S. was rendered unconscious. M.S. also testified that her two minor children were present in the trailer when the abuse occurred.

{¶ 10} Additionally, M.S. testified that Cochran attempted to burn her with cooking oil and attempted to electrocute her with a portable jumper cable box. Cochran eventually began brandishing a handgun and threatening to shoot her. M.S. testified that Cochran pointed the handgun at her repeatedly, struck her with it, and shoved it into her mouth. On two occasions during the four-day period in which the abuse occurred, Cochran fired the weapon inside the trailer. One of the bullets was later found to have passed through the wall of the living room into the children's bedroom. M.S. also testified that Cochran stabbed her in the arms, legs, and chest with ink pens, burned her with a cigarette, and hit her in the back several times with a piece of baseboard.

{¶ 11} M.S. testified that Cochran allowed her to leave the trailer on three occasions between August 25, 2018, and August 29, 2018; her children remained at home with Cochran on two of the occasions, and the third time she was accompanied by Cochran and her children. Significantly, M.S. testified that Cochran was armed with the handgun when they left the trailer on the third occasion.

{¶ 12} Fairborn Police Detective John McGuire was a member of the SWAT team that apprehended Cochran. Detective McGuire testified that he observed M.S.'s children being removed from the trailer and placed in the custody of their maternal grandmother, Boyd. Thereafter, McGuire obtained a search warrant for trailer that M.S. and Cochran

shared. When searching the trailer, McGuire found a .22 caliber handgun and a spent shell casing. Upon further investigation, McGuire found two bullet holes, one in the bedroom M.S. and Cochran shared and one in the wall between the living room and the children's bedroom. Fairborn Police Officer Christopher Helman test-fired the handgun and reported that it was operable. Malorie Kulp, an expert in forensic biology and DNA analysis at the Ohio Bureau of Criminal Investigation, testified that she discovered M.S.'s blood on swabs taken from the crime scene. Kulp also found Cochran's DNA on the handgun retrieved from the trailer by Detective McGuire.

{¶ 13} After Cochran was arrested and taken to jail, he was interviewed by Fairborn Police Detective Shaun Pettit. Detective Pettit testified that Cochran admitted that he "beat [M.S.] up." Tr. 397. However, Cochran denied that he held M.S. against her will. Detective Pettit also testified that Cochran stated that he "blacked out" and did not remember physically abusing M.S. from August 25-29, 2018. Tr. 401. Nevertheless, Cochran did admit that he backhanded M.S. and hit her with a "charger cord." *Id.*

{¶ 14} On September 7, 2018, Cochran was indicted for the following offenses: Count I, attempted murder; Count II, kidnapping; Count III, felonious assault (serious physical harm); Count IV, felonious assault (deadly weapon); Count V, endangering children; Count VI, endangering children; and Count VII, domestic violence. Counts II, III, and IV were accompanied by firearm specifications. The indictment also contained a forfeiture specification for a handgun. At his arraignment on September 14, 2018, Cochran pled not guilty to the charged offenses, and the trial court set his bond at $1,000,000.

{¶ 15} On May 20, 2019, the State filed a motion to dismiss Count I of the

indictment for attempted murder, and the trial court granted the State's motion. The remaining counts were renumbered to reflect the dismissal of the attempted murder charge. A jury trial was held from May 20 to May 22, 2019. We note that Juror 12 was excused at the end of the first day of trial, after she informed the trial court that she could not judge Cochran in a fair and impartial manner based upon the nature of the offenses. Juror 12 was replaced with an alternate, and Cochran was found guilty on all counts and firearm specifications.

{¶ 16} On May 30, 2019, the trial court sentenced Cochran to 11 years for the kidnapping, eight years for each count of felonious assault, 180 days for each count of endangering children, and 180 days for domestic violence. The kidnapping and felonious assaults each had mandatory post-release control of five years. Additionally, Cochran was sentenced to a mandatory term of 36 months in prison for each of the firearm specifications. The trial court ordered Counts I, II, and III (the kidnapping and two felonious assaults) to be served consecutively to one another and consecutively to the 9-year sentence for the three firearm specifications, but concurrently to the sentences on the other counts, for an aggregate sentence of 36 years in prison.

{¶ 17} It is from this judgment that Cochran now appeals.

{¶ 18} Cochran's first assignment of error is as follows:

THE TRIAL COURT ERRED IN CHARGING THE JURY WITH AN INSTRUCTION PERTAINING TO SUFFICIENCY OF EVIDENCE, WHICH INVITED THE JURY TO IGNORE AN ELEMENT OF THE OFFENSE.

{¶ 19} In his first assignment, Cochran contends that the trial court erred when it instructed the jury with respect to Count III, felonious assault with a deadly weapon.

Specifically, Cochran argues that the instruction given by the trial court regarding Count III improperly directed "the jury to ignore its own fact-finding function by excusing deliberation on necessary elements of the offense." Appellant's Brief p. 9.   Simply put, Cochran argues that the evidence was insufficient to establish that he intended to cause physical harm to M.S. with the handgun because he did not actually shoot her, but only threatened to shoot her.

{¶ 20} Initially, we note that Cochran did not object to the trial court's jury instruction regarding Count III.   Cochran has therefore waived all error except plain error. *State v. DeWitt*, 2d Dist. Montgomery No. 24437, 2012-Ohio-635, ¶ 28.   To prevail under the plain error standard, an appellant must demonstrate both that there was an obvious error in the proceedings and that, but for the error, the outcome of the trial clearly would have been otherwise. *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 61-62.

{¶ 21} In *Googash v. Conrad*, 2d Dist. Montgomery Nos. 20184, 20191, 2004-Ohio-5796, we reiterated the following standard:

> In reviewing proposed errors to jury instructions, an appellate court must consider the jury charge as a whole and decide "whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights."   *Becker v. Lake Cty. Mem. Hosp. W.* (1990), 53 Ohio St.3d 202, 208, 560 N.E.2d 165.   Thus, the proper standard of review is whether the trial court abused its discretion in instructing the jury as it did. *State v. Wolons* (1989), 44 Ohio St.3d 64, 68, 541 N.E.2d 443.

*Id.* at ¶ 26.

{¶ 22} Felonious assault is defined in R.C. 2903.11(A)(2) as follows: "No person shall knowingly do either of the following * * * (2) Cause or attempt to cause physical harm to another or another's unborn by means of a deadly weapon or dangerous ordinance."

{¶ 23} At the close of evidence, the trial court instructed the jury on Count III, felonious assault with a deadly weapon, as follows:

The Defendant, Dustin S. Cochran, is also charged with another count of Felonious Assault (by means of a firearm). Before you can find the Defendant guilty, you must find beyond a reasonable doubt that between August 25, 2018, and August 29, 2018, in Greene County, Ohio, the Defendant, Dustin Cochran, did, by means of a deadly weapon: to wit, a firearm, knowingly cause or attempted [sic] to cause physical harm to [M.S.].

The act of pointing a deadly weapon at another, coupled with a threat, which indicates an intention to use such weapon, is sufficient evidence to convict the Defendant, Dustin Cochran, of the offense of Felonious Assault (by means of a firearm).

{¶ 24} We note that the felonious assault instruction utilized by the trial court directly mirrored the language in 2 Ohio Jury Instructions, Section 503.11(A) (Rev. Dec. 11, 2010) for felonious assault. *See also* R.C. 2903.11(A) (offenses committed on or after March 14, 2007). Additionally, the second paragraph of the trial court's felonious assault instruction was taken directly from the comments section for 2 Ohio Jury Instructions, Section 503.11(A), which states "[t]he act of pointing a deadly weapon at

another coupled with a threat, which indicates an intention to use such weapon, is sufficient evidence to convict a defendant of the offense of felonious assault. *State v. Green* (1991), 58 Ohio St.3d 239. "

{¶ 25} In support of his argument that he did not attempt to cause M.S. physical harm, Cochran relies on *State v. Brooks*, 44 Ohio St.3d 185, 542 N.E.2d 636 (1989). In *Brooks,* the Ohio Supreme Court addressed whether the pointing of a deadly weapon was "an 'attempt to cause physical harm' to another by means of a deadly weapon as encompassed in the definition of 'felonious assault.' " *Id*. at 189. The defendant in *Brooks* was involved in a "heated conversation" with a barmaid, which resulted in the defendant pointing a handgun at the woman's face and stating, "Bitch, I will kill you." *Id.* at 187. The Supreme Court upheld Brooks's felonious assault conviction based upon the totality of the circumstances. However, it went on to hold that, "[t]he act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient to convict a defendant of the offense of 'felonious assault' as defined by R.C. 2903.11(A)(2)." *Id.* at syllabus.

{¶ 26} In *State v. Green*, 58 Ohio St.3d 239, 569 N.E.2d 1038 (1991), the Court reviewed its decision in *Brooks* and explained:

It can be readily gleaned from our holding in *Brooks* * * * that the additional evidence needed to uphold a felonious assault charge could include verbal threats as perceived by a reasonable person under the circumstances. Thus, the act of pointing a deadly weapon at another coupled with a threat, which indicates an intention to use such weapon, is sufficient evidence to convict a defendant of the offense of "felonious

assault" as defined by R.C. 2903.11(A)(2).

*Id.* at paragraph one the syllabus; *see also State v. Ellington*, 2d Dist. Montgomery No. 23828, 2010-Ohio-5280, ¶ 20-24. "As long as there is competent, credible evidence that a defendant pointed a deadly weapon at another while making threats of an intention to use the weapon, a reviewing court must affirm the conviction for Felonious Assault." *State v. Burch*, 2d Dist. Montgomery No. 14488, 1995 WL 570567, *3 (Sept. 29, 1995).

{¶ 27} Here, Cochran argues that the facts in the instant case are distinguishable from the facts in *Brooks* and *Green* by asserting that the Ohio Supreme Court found that there had to be a continued physical struggle to maintain control of the firearm and flight from the scene by the defendant upon the police being called. Upon review, we find that Cochran's attempt to distinguish the facts in the instant case from the facts in *Brooks* and *Green* is without merit and a mischaracterization of the holdings in those cases.

{¶ 28} In the instant case, the State presented sufficient evidence through M.S.'s testimony for the jury to find the essential elements of felonious assault: Cochran knowingly attempted to cause physical harm to M.S. by means of a deadly weapon. Specifically, M.S. testified that Cochran brandished a handgun inside the trailer while threatening to shoot her. M.S. also testified that Cochran pointed the handgun at her repeatedly, struck her with it, and shoved it into her mouth. Cochran fired the weapon twice inside the trailer, and one of the bullets was later found to have passed through the wall of the living room into the children's bedroom.

{¶ 29} Upon review, we conclude that the jury instruction for felonious assault with a deadly weapon given by the trial court was a correct statement of law and an appropriate instruction for the trial court to give to the jury based on the evidence adduced at trial.

*See Green,* 58 Ohio St.3d 239, 569 N.E.2d 1038*,* paragraph one of the syllabus; 2 Ohio Jury Instructions, Section 503.11(A).   Accordingly, we find that the trial court did not err, plainly or otherwise, when it provided that jury instruction.

{¶ 30} Cochran's first assignment of error is overruled.

{¶ 31} Cochran's second assignment of error is as follows:

THE TRIAL COURT ERRED IN NOT PERMITTING THE APPELLANT TO CROSS-EXAMINE THE ALLEGED VICTIM WITH PRIOR INCONSISTENT STATEMENTS MADE AS A PART OF A CHILD ABUSE INVESTIGATION.

{¶ 32} In his second assignment of error, Cochran argues that the trial court erred when it excluded the use of statements allegedly made by M.S. in the context of a Children's Services investigation; Cochran sought to cross-examine the victim about these statements.   We note that Cochran did not object to the trial court's decision excluding the statements, nor did he file a pretrial discovery request pertaining to those materials.

{¶ 33} It is well settled that "[t]he admission or exclusion of evidence rests soundly within the trial court's discretion." *State v. Black*, 181 Ohio App.3d 821, 2009-Ohio-1629, 911 N.E.2d 309, ¶ 13 (2d Dist.).   "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.

{¶ 34} It is well-settled that the prosecution's suppression of evidence favorable to an accused violates due process where the evidence is material either to guilt or

punishment, irrespective of the prosecution's good or bad faith. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Similarly, Crim.R. 16(B)(5) requires the prosecution to disclose "[a]ny evidence favorable to the defendant and material to guilt or punishment." Hence, *Brady* and Crim.R. 16(B)(5) places upon the State a duty to disclose evidence "that is both favorable to the accused and 'material either to guilt or to punishment.' " *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), quoting *Brady* at 87. The prosecution's duty of disclosure under *Brady* extends to favorable and material evidence that is known to the prosecution and to others acting on the prosecution's behalf in the case. *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

{¶ 35} When considering pretrial discovery, the results of an in camera review by a judge and the judge's determinations of what is discoverable are evaluated by an appellate court under an abuse-of-discretion standard. *See State v. Jones*, 2d Dist. Montgomery No. 27354, 2018-Ohio-2332, ¶ 22; *see also State v. Orvick*, 153 Ohio App.3d 65, 790 N.E.2d 1238, 2003-Ohio-2682, ¶13 (3d Dist.). "[W]hen applying an abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court but must be guided by a presumption that the findings of the trial court are correct." *Focke v. Focke*, 83 Ohio App.3d 552, 555, 615 N.E.2d 327 (2d Dist.1992). An abuse of discretion occurs when a court renders a decision that is arbitrary, unreasonable or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 36} Departments of human services and children services boards are required to keep records and reports of alleged child abuse or neglect, and these records are

generally confidential. *See* R.C. 2151.421(I)(1); *State ex rel. Clough v. Franklin Cty. Children Servs.*, 144 Ohio St.3d 83, 2015-Ohio-3425, 40 N.E.3d 1132, ¶ 19.

{¶ 37} R.C. 2151.421(I)(1) states:

Except as provided in divisions (I)(4) and (O) of this section, a report made under this section is confidential. The information provided in a report made pursuant to this section and the name of the person who made the report shall not be released for use, and shall not be used, as evidence in any civil action or proceeding brought against the person who made the report. Nothing in this division shall preclude the use of reports of other incidents of known or suspected abuse or neglect in a civil action or proceeding brought pursuant to division (N) of this section against a person who is alleged to have violated division (A)(1) of this section, provided that any information in a report that would identify the child who is the subject of the report or the maker of the report, if the maker of the report is not the defendant or an agent or employee of the defendant, has been redacted. *In a criminal proceeding, the report is admissible in evidence in accordance with the Rules of Evidence and is subject to discovery in accordance with the Rules of Criminal Procedur*e.

(Emphasis added).

{¶ 38} In cases involving children services records, a disclosure requirement comes into conflict with the confidentiality that attaches to such records pursuant to R.C. 2151.421(H)(1) and R.C. 5153.17. *Johnson v. Johnson*, 134 Ohio App.3d 579, 583, 731 N.E.2d 1144 (3d Dist.1999). The United States Supreme Court has resolved this conflict

by holding that a defendant's due process right to a fair trial entitles him to an in camera inspection by the trial court of confidential children services records to assess whether the records contain evidence that is material to the defendant's guilt. *Pennsylvania v. Ritchie*, 480 U.S. 39, 60, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987).

{¶ 39} Material evidence is that which goes to "the substance of the allegations" against a defendant, i.e., evidence the defendant would have used to acquit himself of the specific charges levied against him. *State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1, ¶ 13; *see also State v. Beavers*, 2d Dist. Montgomery No. 26036, 2015-Ohio-1161, ¶ 41. Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *State v. Iacona*, 93 Ohio St.3d 83, 89, 752 N.E.2d 937 (2001).

{¶ 40} A court may conduct an in camera inspection of child-abuse records or reports and also has the inherent power to order disclosure of such records or reports where (1) the records or reports are relevant to the pending action, (2) good cause for such a request has been established by the person seeking disclosure, and (3) where admission of the records or reports outweighs the confidentiality considerations set forth in R.C. 5153.17 and R.C. 2151.421(H)(1). *Johnson* at 585. "Good cause" is defined as that which is in the best interest of the child. *Id.*

{¶ 41} While cross-examining M.S. during trial, defense counsel attempted to elicit testimony regarding an investigation performed by Children's Services. The prosecutor requested a sidebar in which he asked defense counsel to clarify the question. The State also stated that Children's Services records are confidential and/or privileged. The

following exchange then occurred:

Defense Counsel: Do you recall telling Children's Services that he used the gun to ---

The State: Your Honor, may we approach on that?

The Court: Approach.

(Bench Conference)

The State: Aren't Children's Services' records privileged? I mean, I'm just saying. I don't care, but I think they're privileged.

Defense Counsel: I think they are confidential.

The State: Confidential?

The Court: This is something I would have definitely wanted to be aware of beforehand, folks. Are there Children's Services records that are going to be referenced?

Defense Counsel: Just.

The State: I wasn't going to.

Defense Counsel: Just with respect to her statement that was made to Children's Services during their portion of the investigation.

The State: Why don't you ask any other – any other person who may have been interested in the investigation? Does that make sense? I just – you see what I'm saying?

Defense Counsel: Right.

* * *

Defense Counsel: If I can't elicit from her that different statement that

she told Children's Services, because it's either privileged or confidential, then, I'll withdraw the question.

The Court: Well, if you're in my shoes though, you're just trying to make the right decision to be fair. Generally, you folks are always – depending on which side is trying to use it – is up in arms about Children's Services records. And that caught my ear real quick. So, I'm just trying to make the right decision here.

The State: I think it ---

The Court: The one concern I have is that it's going to mislead the jury. But go on, folks.

The State: I guess I – well, I kind of like the idea he can ask did you speak to anyone else involved in investigating circumstances – or something like that. I'm just – without getting into the CSB records that – and I just know this from ---

Defense Counsel: How about I word it this way? Did you – did you tell any other investigative agencies that he used this gun a certain different way? And see what she [M.S.] says.

I mean, I'm sort of stuck in a position where I could ask that question. And if she denies it, I can't even pull the records out to impeach her with it.

The State: I understand.

Defense Counsel: Yeah.

The State: And I don't want to keep you from being able to answer your question. I'm just concerned, you know, my office also represents

Children's Services.   And I know these are privileged and confidential records generally.

The Court: These are things that I tried to vet out last week when I said is there anything else that I need to know about gentlemen?   And this would been, obviously, something that I would have need to know about. Well, I don't want to take a break, so, how do you want to handle this, folks?

The State: I'm fine with how you just answered it – or, you know just leave Children's Services out of it.

Defense Counsel: Okay.

The State: Right.   And you can ask your question.

Defense Counsel: Yeah, I'll just state it in terms of any other investigative agencies.

The Court: And then if she denies it, what do you do?

Defense Counsel: I'm stuck.

The State: Then, he's got to live with the answer.

* * *

(Bench Conference Concludes)

Tr. 241-245.[2]

{¶ 42} In the instant case, there is no evidence in the record that Cochran requested an in camera inspection of the Children's Services records.   Additionally, there

---

[2] We note that when defense counsel asked M.S. whether she remembered telling police and other investigative agencies that Cochran had only hit her in the ears with the gun and whether she remembered telling the same individuals that Cochran had stabbed her with a fork and a pen, she testified that she did not remember saying that.   In fact, M.S. testified that, while she observed Cochran pick up a fork, he never used it.

is no evidence in the record that Cochran ever notified the State or the trial court of his intention to utilize the Children's Services records. Therefore, because Cochran failed to follow the proper statutory procedures allowing for in camera inspection and later introduction of the records at trial, he cannot now claim that the trial court committed reversible error by excluding the records. "Under the invited-error doctrine, a party is not entitled to take advantage of an error that he himself invited or induced the trial court to make." (Emphasis omitted.) *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶ 243, citing *State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404, 2002-Ohio-4849, 775 N.E.2d 517, ¶ 27. Simply put, Cochran failed to adhere to the proper procedure to have the Children's Services records admitted into evidence. The trial court, therefore, did not err when it excluded the confidential records.

{¶ 43} Here, defense counsel did not attempt to admit the Children's Services records into evidence at trial. Cochran also failed to proffer why the statement by M.S. regarding her trial testimony that Cochran struck her all over her body with the gun versus her alleged inconsistent statement to Children's Services that Cochran only struck her on the ears with the gun would make a difference to the case in light of the overwhelming evidence adduced against Cochran regarding the extent of the injuries he inflicted upon M.S. We note that there were also alleged inconsistent statements that M.S. made to Children's Services that Cochran stabbed her with forks and pens. At trial, M.S. testified that Cochran only stabbed her in the legs with pens. As noted by the State, any evidence elicited about prior inconsistent statements made by M.S. to Children's Services would not have ultimately changed the outcome of trial.

{¶ 44} Cochran was able to extensively cross-examine M.S. about her alleged

inconsistent statements to the police officers and other investigative agencies, thereby challenging her credibility with those inquiries. Nevertheless, Cochran elected to proceed without attempting to introduce the Children's Services records or making a proffer to the trial court regarding M.S.'s allegedly inconsistent statements. Accordingly, the trial court did not err when it excluded the Children's Services records from evidence at trial.

{¶ 45} Cochran's second assignment of error is overruled.

{¶ 46} Cochran's third and final assignment of error is as follows:

THE TRIAL COURT ERRED IN ADMITTING SEVERAL PHOTOGRAPHS WHICH WERE CUMULATIVE AND PREJUDICIAL.

{¶ 47} In his final assignment, Cochran contends that the trial court erred when it admitted State Exhibits 1-39, which depicted the injuries suffered by M.S. when she was beaten by Cochran. Specifically, Cochran argues that photographs were duplicative and unfairly prejudicial.

{¶ 48} Evid.R. 403 provides that:

(A) Exclusion Mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

(B) Exclusion Discretionary. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence.

{¶ 49} "In determining the admissibility of a photograph under Evid.R. 403, 'a trial court may reject an otherwise admissible photograph which, because of its inflammatory

nature, creates a danger of prejudicial impact that substantially outweighs the probative value of the photograph as evidence.' Absent such a danger, the photograph is admissible. '[T]he fact that a photograph may be considered gruesome is not, in and of itself, grounds for preventing its introduction into evidence.' The trial court has broad discretion in balancing the probative value against the danger of unfair prejudice, and its determination will not be disturbed on appeal absent a clear abuse of discretion." *State v. Herron*, 2d Dist. Montgomery No. 19894, 2004-Ohio-773, ¶ 64, citing *State v. Reeves*, 2d Dist. Montgomery No. 16987, 1999 WL 129469 (Mar. 12, 1999).

**{¶ 50}** As previously stated, Officer Westerheide was dispatched to take photographs of M.S.'s injuries. Westerheide identified and testified regarding the 39 photographs she took of M.S.'s injuries. There were no objections to Westerheide's testimony with respect to the photographs; however, at the close of the State's case, defense counsel objected to the admission of the photographs as being duplicative. The photographs depicted the extent of the severe bruising to M.S.'s head, face, arms, chest, shoulders, stomach, hips, and legs. The photographs were also used by the State during M.S.'s testimony to illustrate the nature and extent of her injuries, as well as how she received them.

**{¶ 51}** Upon review, we find that the photographs were relevant in that they corroborated and illustrated the testimony of Officer Westerheide and M.S. The introduction of the photographs was relevant and not unfairly prejudicial to Cochran, as it established not only the extent and severity of the injuries that he caused, but also how he caused them. Unfavorable evidence is not equivalent to unfairly prejudicial evidence. *State v. Porter*, 2d Dist. Montgomery No. 28288, 2019-Ohio-4482, ¶ 15. Cochran

severely beat and abused M.S. over the course of multiple days, using several different items.   Additionally, the photographs depicting M.S.'s injuries were probative with regard to the showing of intent and deliberation on the part of Cochran.   Accordingly, we find the trial court did not err in admitting into evidence State's Exhibits 1-39, as the danger of unfair prejudice was minimal and the evidence was clearly probative regarding the nature and extent of the injuries M.S. suffered at the hands of Cochran. *See State v. Morales*, 32 Ohio St.3d 252, 258, 513 N.E.2d 267 (1987).

{¶ 52} Cochran's third assignment of error is overruled.

{¶ 53} All of Cochran's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies sent to:

Marcy A. Vonderwell
Charles M. Blue
Hon. Michael A. Buckwalter